## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TRAVIS R. JONES,** | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. SAG-22-02572** |
| | * | |
| **BLUE OCEAN REALTY LLC,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

*       *       *       *       *       *       *       *       *       *       *       *       *

## <u>MEMORANDUM OPINION</u>

Plaintiff Travis R. Jones ("Plaintiff"), who is self-represented, filed an Amended Complaint against Blue Ocean Realty LLC and Oaklee Village Baltimore LLC (collectively "Defendants") alleging claims including federal discrimination claims relating to a decision not to rent him an apartment. ECF 6. Defendants have filed a Motion to Dismiss for failure to state a claim. ECF 17. Plaintiff filed an opposition, ECF 31, and Defendants filed a reply, ECF 32. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, this Court will grant Defendants' Motion to Dismiss, dismissing the federal claims without prejudice and declining to exercise supplemental jurisdiction over Plaintiff's state law claims for negligence, defamation, and breach of contract. Plaintiff may therefore refile such claims in state court.

### I.    FACTUAL BACKGROUND

The facts contained herein are derived from Plaintiff's Amended Complaint, including its attachments, and are taken in the light most favorable to Plaintiff as the non-moving party. Plaintiff filled out an online application with Defendants to rent a one-bedroom plus den apartment at

Oaklee Village Apartments. ECF 6-1 at 44. Plaintiff was pre-approved for the rental. *Id.* at 49. The initial online approval notification referenced that Defendants had "a few more things to verify before you complete the approval process."[1] *Id.* On July 20, 2020, the leasing agent, Stanley Ross, Jr., left a voice mail for Plaintiff in which he informed Plaintiff that he still needed his "paystubs and ID." *Id.* at 52. That same day, Ross emailed Plaintiff an "approval letter." *Id.* at 44; *id.* at 56–58. The email specified that Plaintiff's "water bill is already set up and will be paid to Oaklee Village." *Id.* at 56. The approval letter said, "Your address is below 3934 Colchester Road Unit # 356 Baltimore, MD 21299." *Id.* at 58. In the email attaching the "approval letter," Ross reiterated to Plaintiff that they needed his "4 most recent paystubs (Source of Monthly Income)" "ASAP to complete the application process." *Id.* at 56. On July 21, 2020, Plaintiff delivered a money order to the leasing office to pay the $850.00 security deposit for the apartment. *Id.* at 50. That following day, Ross sent a "revised approval letter" noting that the security deposit had been paid and Plaintiff had a move-in date of October 1, 2020. *Id.* at 59–62. The email with the revised approval letter again reiterated the need for income verification documentation "ASAP to complete the application process." *Id.* at 59–61.

---

[1] In his opposition, Plaintiff suggests that "the Defendant's online application process required Plaintiff to submit his income amount at the beginning of the application process before being pre-qualified, thereby making the Defendants aware of Plaintiff's income amount on July 17th, 2020." ECF 31 at 3. Although alleging that Defendants accurately knew his income level at the time of his application could permit an inference of discrimination at the motion to dismiss stage, this Court has reviewed Plaintiff's citations to the exhibits to the Amended Complaint, which do not make or substantiate that assertion. In fact, this Court has not found anything in the Amended Complaint or its attachments suggesting that Plaintiff reported his accurate income amount at the time of his application. And a plaintiff cannot use an opposition to a motion to amend his complaint. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013).

On September 16, 2020, Plaintiff received an email that attached a "revised approval letter" with a revised move-in date of October 8, 2020. *Id.* at 63–65. On October 1, 2020, Ross emailed Plaintiff that he had to provide the mandatory paperwork, including income verification and identity documentation, or his "application will be cancelled and security deposit will be given back to you." *Id.* at 66. Plaintiff delivered the documents to the leasing office on October 2, 2020, including his Social Security Benefits Award Letter documenting $1750 per month in income. ECF 6-1 at 17, 45. On October 3, 2020, Plaintiff purchased renter's insurance with State Farm for the Oaklee Village address, and opened an account with Baltimore Gas & Electric in anticipation of his move-in date. ECF 6-1 at 45–46, 81.

On October 5, 2020, after submitting his income verification documentation, Plaintiff received an email from Ross stating that he was not "income qualified to lease an apartment here at Oaklee Village." ECF 6-1 at 46, 69. The email attached a document containing the income requirements policy for the apartments. *Id.* at 74. The next day, Plaintiff emailed Ross asking them to reconsider and suggesting that he considered their decision to be discriminatory. *Id.* at 46, 70. He attached documentation about a new law prohibiting income discrimination against persons in protected classes. *Id.* Plaintiff followed up with another email seeking reconsideration and an opportunity to inspect the rental unit. *Id.* at 46, 71. Later on October 7, 2020, Ross emailed that they had been trying to contact Plaintiff "numerous times via phone and email with no response from you." *Id.* at 71. That same afternoon, a supervisory agent with Defendants, Sha'Ron Jones, emailed Ross and copied Plaintiff, stating "Stan tell him his number is not active. Verify number." *Id.* at 47, 72. Jones subsequently sent a second email, which was also cc'd to Plaintiff, telling Ross, "You can tell [Plaintiff] to email me directly cus the phone is off . . . guess he didn't qualify to pay phone bill either [emoji sign with smiling face]." *Id.* at 72.

3

Plaintiff alleges that as a result of Defendant's actions and declination of his application, he accumulated expenses for storage unit and mailbox rental (in addition to the cost of the insurance policy he had procured), he lost his motor vehicle and could not acquire a driver's license because he could not provide address verification to the MVA, and he suffered emotional distress when his fiancée contracted Covid from a person with whom they were sharing a small apartment.[2] ECF 6 at 4–5 ("Pray for relief" section).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684

---

[2] Plaintiff asserts other damages suffered by his fiancée, who is not a named Plaintiff. This Court has therefore not included those damages in the recitation of the facts Plaintiff alleges to support his claim.

(2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is

entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Here, Plaintiff attached 83 pages of documents to his Amended Complaint, including all of the email exchanges between Plaintiff and Defendants. ECF 6-1. Federal courts may consider documents incorporated into a complaint by reference without converting a 12(b)(6) motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Also, courts may consider other documents intrinsic to the complaint and integral to proving the sufficiency of that complaint, *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006), without converting the motion into a Rule 56 summary judgment motion. Although Plaintiff's SSA Award Letter was attached to his opposition, not his Amended Complaint, it provides the sole basis for Defendants' alleged awareness of his disability. *See* ECF 6 at 2 ¶ 1 ("The plaintiff alleges that the defendants' [sic] then changed requirements after receiving the plaintiff's verification documents on October 2 which included the plaintiff's Social Security Disability Award letter."). It therefore is both intrinsic to the Amended Complaint and integral to proving its sufficiency, and this Court can consider it without converting the motion to one for summary judgment.

Finally, because Plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd* 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd.*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

## III.   ANALYSIS

Although Plaintiff's Amended Complaint does not specify any individual legal claims, it can be fairly read to contain federal discrimination claims under the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"). ECF 6. Both statutes prohibit discrimination against certain classes of persons in certain circumstances. This Court must assess whether Plaintiff has alleged facts to plausibly state a claim under either federal statute. For the reasons set forth below, he has not.

### A.   FHA

Initially, Plaintiff's Amended Complaint alleges that Defendants discriminated against him in his rental process due to his "disability" and his "source of income (Social Security Disability Insurance)." ECF 6 at 1. The FHA lists a series of prohibited types of discrimination, including discrimination on the basis of race, color, religion, sex, familial status, national origin, and handicap. *See* 42 U.S.C. § 3604. But, unlike Maryland's fair housing law, the FHA does not protect against discrimination on the basis of "source of income." *See Williams v. Arora Hills Homeowners Ass'n, Inc.*, Civ. No. DKC-19-3370, 2021 WL 2226199, at *5 n.8 (D. Md. June 2, 2021).

As to Plaintiff's disability, the FHA makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter." 42 U.S.C. § 3604(f)(1). The statute further defines "handicap" as:

(1) a physical or mental impairment which substantially limits one or more of such person's major life activities;
(2) a record of having such an impairment, or
(3) being regarded as having such an impairment[.]

*Id.* § 3602(h). Here, Plaintiff's Amended Complaint fails to identify his impairment at all. While he alleges that he receives disability benefits, he does not identify the nature of his impairment to allow this Court to ascertain whether or not his impairment plausibly meets the definition of "handicap" in the FHA. More importantly, Plaintiff has alleged no facts suggesting that Defendants at any time knew of the nature of his impairment. Without such facts, Plaintiff cannot plausibly allege that Defendants took action because of a "handicap" of which they were apparently unaware.

Instead, Plaintiff appears to allege that Defendants "regarded him as disabled" because they learned of his receipt of SSA disability benefits. While a fair inference can certainly be drawn that once they received his income verification paperwork, Defendants knew he had a disability qualifying him to receive benefits, Plaintiff offers no facts to plausibly suggest that knowledge motivated the rejection of his application. There are no comments by any employee of Defendants referencing Plaintiff's disability. In fact, even in the unquestionably rude email that appears to have been inadvertently copied to Plaintiff, Jones's unprofessional comment relates to Plaintiff's perceived lack of sufficient income, but not to the nature or source of that income or any belief that he suffers from any physical or mental impairment.[3] In fact, Defendants' list of acceptable

_____

[3] Plaintiff quite correctly suggests that the Defendants' repeated insistence that he provide "income verification" is not the same as telling him that he had to satisfy mandatory income qualifications. Certainly, both prospective applicants and the Defendants might be better served if

income verification documentation expressly includes "SSDI Disability Benefits verification." ECF 6-1 at 74. And in the absence of any direct allegations suggesting disability discrimination in Plaintiff's situation, Plaintiff also has not alleged circumstantial facts to plausibly suggest such discrimination. For example, Plaintiff has not alleged that any non-disabled applicant was permitted to rent an Oaklee Village apartment without meeting the income requirements. Absent some facts to plausibly suggest that Defendants were motivated to deny his application because of a perceived disability, instead of the documented income requirements that Plaintiff's income did not satisfy, Plaintiff has not met the *Iqbal/Twombly* pleading standard and his FHA claim must be dismissed.

### B.  ADA

The ADA prohibits "discrimination against the handicapped in four broad areas: transportation, public accommodations, telecommunications, and employment." *United States v. Southern Mgmt. Corp.*, 955 F.2d 914, 922 (4th Cir.1992). Here, Plaintiff contends that Title III of the ADA, addressing public accommodations, has been violated. Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To state a claim under Title III of the ADA, a person alleging discrimination must show, inter alia, that [he] is disabled within the meaning of the ADA and that the defendant is a private entity that owns, leases, or operates a place of public

---

those requirements were clearly stated at the beginning of the application process. But it is also true that had Plaintiff submitted his income verification paperwork online at the time of his application, or in July when first requested, this issue would have surfaced much earlier in the application process.

accommodation." *White v. Secor, Inc.*, Civ. No. 7:10–cv–00428, 2010 WL 4630320, at *2 (W.D. Va. Nov. 5, 2010). The statute defines "public accommodation" as "private entities [which] affect commerce—[including] an inn, . . . a restaurant, . . . a motion picture house, . . . an auditorium, . . . or other place of public gathering." 42 U.S.C. § 12181(7)).

Residential apartment complexes like Oaklee Village are not places of public accommodation, aside from their limited common areas open to the general public. *See, e.g.*, *Hardaway v. Equity Residential Management, LLC*, Civ. Action No. DKC-11-1924, 2012 WL 3903489, at *5 (D. Md. Sept. 6, 2012) ("[T]he public accommodation provision of the ADA cannot apply against The Veridian [a residential building]."). *Gragg v. Park Ridge Mobile Home Court, LLP*, Civ. No. 10-1313, 2011 WL 4459701, at *4 (C.D. Ill. Sept. 26, 2011) ("residential facilities— such as apartments and condominiums—do not fall within the definition of public accommodation"); *see also Radivojevic v. Granville Terrace Mutual Ownership Trust*, No. 00 C 3090, 2001 WL 123796, at *3 (N.D. Ill. Jan 31, 2001); *Hanks v. Tilley*, No. 98-CV-00789, 1999 WL 1068484, at *2 (M.D.N.C. Feb. 2, 1999); *Independent Hous. Servs. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 & n.14 (N.D. Cal. 1993). Thus, Plaintiff cannot avail himself of ADA's public accommodation provision to sue for a failure to rent him a residential unit.

Second, even if Oaklee Village were a place of public accommodation, Title III does not permit a private party to sue for monetary damages, which is the relief Plaintiff seeks. *See Bray v. Marriott Int'l*, 158 F. Supp. 3d 441, 444 (D. Md. 2016) (quoting *Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 429–30 (D. Md. 2014) (in turn citing *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 50 (1st Cir. 2006) (collecting cases)). To counter that position, Plaintiff offers a citation that he suggests allows a breach of contract claim to go forward if an ADA violation also constitutes a breach of contract. *See* ECF 31 at 25 (citing *Access 4 All, Inc. v. Trump Int'l Hotel Collection*,

*LLC*, 297 F. Supp. 3d 1230 (S.D. Fl. 2018)).[4] This Court does not reach the issue of whether Plaintiff might have a viable breach of contract claim under state law, but this Court is aware of no authority allowing Plaintiff to seek monetary damages under Title III of the ADA.

Of course, some of the other issues precluding Plaintiff's FHA claim from moving forward, such as the absence of plausible allegations that Defendants regarded him as disabled or knew of the nature of his disability, would also affect his ADA claim. And the ADA, like the FHA, does not protect against discrimination on the basis of "source of income." Ultimately, however, an ADA public accommodation claim, seeking monetary damages, is simply not cognizable against Defendants, who operate a residential apartment complex.

### C.  Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction" over state claims if, *inter alia*, the court "has dismissed all claims over which it has original jurisdiction," or, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." The Supreme Court has explained that district judges should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Id.* (footnote omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)

---

[4] Plaintiff's citation is incorrect, as there is no such case. There is a case by the same name at 458 F. Supp. 2d 160 (S.D.N.Y. 2006).

("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

After considering the *Carnegie-Mellon* factors, this Court will decline to exercise supplemental jurisdiction over the Plaintiff's pendent state law claims. This litigation has just begun and this matter is not complicated in its scope. Indeed, this Court has only ruled on motions for extensions of time and the instant motion to dismiss. Plaintiff filed this lawsuit in forma pauperis and has not incurred a filing fee. Assuming Plaintiff refiles his contractual, defamation, and negligence claims against Defendants in Maryland state court, that court will be equally well-positioned to consider the merits of Plaintiff's claims under Maryland law, which this Court has not yet considered. Moreover, this case is a quintessential rental dispute and as such should be litigated in Maryland courts, given the state's strong interest in adjudicating disputes under its own laws.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 17, will be GRANTED without prejudice as to Plaintiff's federal claims, and this Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims, leaving Plaintiff free to refile those claims in the appropriate Maryland state court. This case will be CLOSED. A separate Order follows.


Dated: April 25, 2023                                         /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge